Robert E. Fischer, J.
This motion hy the plaintiffs seeks a preliminary injunction as well as summary judgment in the underlying action for declaratory judgment. The plaintiff teachers, Hodgkins and Clayton, and the Susquehanna Valley Teachers’ Association (the Association) began this action against an gmploying school district and its Board of Education (referred to collectively as “the District”) seeking an injunction and declaratory judgment invalidating disciplinary proceedings *93 brought against the teachers pursuant to section 3020-a of the Education Law as recently supplemented by administrative regulations. The Commissioner of Education of the .State of New York has sought to intervene.
The first in the series of events culminating in this motion was the holding on February 19, 1974, by a three-Judge panel in the United States District Court, Western District of New York, Kinsella v. Board of Educ. of Cent. School Dist. No. 7 (378 F. Supp. 54, 60). That court held that section 3020-a of the Education Law, which establishes procedures for the discipline of tenured teachers by the employing Board of Education, “ absent administrative regulations requiring decision [of the Board of Education] to be based upon evidence elicited before the hearing panel and the decision of the Board to set forth the reasons and factual basis therefor, is unconstitutional ”.
On February 28, 1974, the New York State Board of Regents reacted to the Kinsella decision by approving amendments to the regulations of the Commissioner of Education designed to overcome the procedural defects in the section 3020-a proceedings disclosed in the decision. Subdivision (h) of section 82.10 of title 8 of the Official Compilation of Codes, Rules and Regulations of the State of New York was accordingly amended to provide each employing board of education with a copy of the transcript of the disciplinary proceedings, findings, and recommendations of the hearing panel, and a new section 82.11 was added requiring that the decision of the employing board be based solely upon those proceedings with the reasons and factual ■basis for the findings set forth.
It was clearly the purpose of the Commissioner of Education and Board of Regents to overcome Kinsella objections by administrative requirement that the employing board premise its final adjudication on the statutory hearing provided by section 3020-a. These amended regulations were duly promulgated and filed as emergency measures in accordance with subdivision 3 of section 101-a of the Executive Law.
The Kinsella decision and the modified regulations of the Commissioner of Education gave rise to this action by plaintiffs Hodgkins and Clayton, who are tenured teachers of1 music employed by the defendant, and by the Association to which the teachers belonged when the Board of Education of the school district which employed the teachers determined that probable cause existed for charges that the teachers had used unwarranted and excessive physical force upon certain of their stu *94 dents. The teachers were advised by letter on February 28, 1974 that they were suspended from employment pending a hearing on the charges pursuant to section 3020-a as modified, the letters being amended later to advise that the suspension was without pay.
On March 14, 1974 the plaintiffs obtained a temporary order restraining the District from continuing the hearing procedures and penalties under section 3020-a as supplemented by the amended regulations of the Commissioner of Education, together with an order to show cause why a preliminary injunction should not issue against the continued suspension of the two teachers and the discharge of any other teacher belonging to the plaintiff Association under similar facts and circumstances. Plaintiffs, in the complaint accompanying the order to show cause, sought an injunction against suspension or termination, as well as a declaratory judgment that suspension or termination pursuant to section 3020-a as supplemented, constitutes a denial of their constitutional rights. In an affidavit accompanying the complaint and order to show-cause, plaintiffs’ counsel asserts that the New York State 'Commissioner of Education exceeded his statutory authority in attempting to overcome the constitutional defects of section 3020-a by quasi-legislative regulation, and that suspension of a tenured teacher without pay and without a prior hearing is an unconstitutional denial of due process.
In response, the District seeks dismissal of the complaint asserting that the Commissioner’s adoption of modified regulation is within his lawful powers, and that enjoinment of a constitutionally acceptable revocation procedure would prevent it from carrying out the duties imposed by section 1709 of the Education Law to manage and control the school district.
At the time of oral argument, the Commissioner of Education’s application to intervene as a defendant was granted, and a proposed answer and affidavit was submitted on his behalf in which he joins the District in asserting that the complaint fails to state a cause of action in that his powers to promulgate the regulations at issue, as approved by the Board of Regents, are within the broad powers granted by section 207 of the Education Law and not otherwise circumscribed by section 3020-a.
Plaintiffs’ motion for summary judgment permits this court to search the record, and if such demonstrates that any party is entitled, judgment will be granted without cross motion (CPLR 3212, subd. [b]).
CPLR 3001 requires that parties seeking a declaratory judgment present a “ justiciable controversy.” A party may chai *95 lenge the validity of a governmental act only in a genuine controversy arising between the litigants affecting his private rights. “ It is a rule of law designed to prevent the courts from giving judicial interpretations of legislative acts or executive rulings in the absence of injury or threatened injury to one’s personal rights.” (Matter of Donohue v. Cornelius, 17 N Y 2d 390, 397.) Since the complaint alleges no present or potential wrong to the Association as a result of the acts complained of, its action will be dismissed.
As to the remaining parties, it is conceded that the pleadings have raised these basic issues affecting their legal relations:
(1) whether it was within the powers of the Commissioner of Education and the Board of Regents to enact regulations designed to overcome the constitutional defects of section 3020-a disclosed by the Kinsella decision;
(2) whether the District may deny pay to a tenured teacher pending a hearing under section 3020-a on charges;
(3) whether it is an unconstitutional deprivation of rights without due process to suspend and remove a tenured teacher from the classroom prior to a hearing.
In addressing the first question, it should first be noted that in the complex and specialized field of education, the Legislature has granted broad policy, rule-making and administrative powers to the Board of Regents and the Commissioner of Education. Thus, section 207 of the Education Law provides that 11 the regents shall exercise legislative functions concerning the educational system of the state, determine its educational policies, and * * * establish rules for carrying into effect the laws and policies of the state, relating to education, and the functions, powers, duties and trusts conferred or charged upon the university and the education department.” In turn, the Legislature has designated the Commissioner of Education as the ‘1 chief executive officer of the state system of education and of the board of regents ” and has directed that officer to “ enforce all general and special laws relating to the educational system of the state and execute all educational policies determined upon by the board of regents ” (Education Law, § 305). Additionally the Commissioner has been authorized to institute “ such proceedings, or processes as may be necessary to properly enforce and give effect to any provision in this chapter or in any other general or special law pertaining to the school system of the state ” (Education Law, § 308). By these sections, the Commissioner of Education and the Regents are given wide latitude to *96 implement statutory directives and assure their effective execution.
In addition to these broad general powers, when hearing procedures for revocation of tenured teachers were prescribed in 1970, the Legislature specifically delegated to the Commissioner of Education “ the power to establish necessary rules and procedures for the conduct of hearings ” (Educaton Law, § 3020-a, subd. 3, par. c). Thereafter the Commissioner of Education issued regulations specifying the manner in which hearings authorized by that section were to be conducted. Entitled ‘ ‘ Hearings of Charges Against Employees on Tenure ’ ’ and referring to the authority granted in both sections 207 and 3020-a of the Education Law, the regulations specified the means by which charges were to be filed, hearings requested, hearing officers chosen and panel members designated. Included in the regulations were specifications as to the manner in which hearings were to be conducted (8 NYCRR 82.2-82.10), but as disclosed by Emsella, neither the statute nor the regulations required that the final decision of the employing school board specify “ the reasons and factual basis therefor ” and “ be based upon the evidence elicited.” Upon receipt of that decision, amendments to the regulations were approved by the Board of Regents and issued by the Commissioner.*
The plaintiff teachers do not deny the constitutional sufficiency of the directives contained in the regulations as now amended, but deny the authority of the Commissioner of Education to *97 provide them. They urge that the constitutional defects disclosed Toy Kinsella, are fatal to the statute and beyond the powers of the Commissioner to supply.
In support of their argument, plaintiffs point to the specificity of the grant of power contained within section 3020-a providing that the “ commissioner of education shall have the power to establish necessary rules and procedures for the conduct of hearings under this section ” (emphasis supplied), and the absence of any comparable grant of power permitting imposition of the “ due process ” requirements of Kinsella in post-hearing judgments of the employing boards of education.
Acceptance of such argument would disregard both the Legislature’s broad delegation of quasi-legislative authority to the Board of Regents and the Commissioner of Education to fulfill the demands of the State’s dynamic education system as well as the decisional precedents which recognize the necessity for adequate and effective rule-making authority in those officials.
Thus, the general grant of power to the Regents under section 207 of the Education Law has been held sufficient to permit that body to limit ‘ ‘ tenure areas' ’ ’ although “ the concept of tenure arises through legislative action ’ ’ (Matter of Baer v. Nyquist, 40 A D 2d 925). Similarly, it has been held that the powers granted by section 207 include the right to promulgate regulations providing for noncompulsory registration of private nursery schools and kindergartens without specific legislative direction (Jokinen v. Allen, 15 Misc 2d 124).
The delegation of such rule-making authority does not, of course, encompass the right to enact regulations in conflict with a statute or at odds with a clearly defined statutory policy. As a result, the Board of Regents may not provide disciplinary rules which in their effect conflict with statutory sanctions. (Brown v. University of State of N. Y., 242 App. Div. 85, affd. 266 N. Y. 598; Matter of Cherry v. Board of Regents, 289 N. Y. 148.) Nor may the Legislature delegate power to the Regents to license private schools under penal sanction without some definable purpose or limitation. (Packer Coll. Inst. v. University of State of N. Y., 298 N. Y. 184.) On the other hand, when the Legislature has established broad standards of conduct within a particular field of education, the Regents may fill any remaining hiatus under their rule-making power (Strauss v. University of State of N. Y., 2 A D 2d 179, 181; Buhl v. University of State of N. Y., 268 App. Div. 530, 533).
Application of these principles makes it apparent that in providing additional regulations to fulfill the “ due process ” *98 requirements of Kinsella, the Regents and the Commissioner of1 Education'were acting within their lawfully delegated authority and giving effect to the general policy and underlying intent of the Legislature when it enacted section 3020-a of the Education Law. Rather than conflict with the specific direction of section 3020-a to regulate the conduct of hearings, the amended regulations supplement and carry out the apparent legislative scheme, of which that specific direction is a part, by requiring that the hearing be utilized by the employing board as the source of their findings.
Thus Kinsella’s criticism was directed, not to the statutory scheme of section 3020-a, but to the lack of assurance that the scheme would be carried out within “ due process ” procedural safeguards, the same safeguards now supplied by regulation of the bodies created by the Legislature to perform such functions.
Both of plaintiffs’ remaining contentions — that suspension of a tenured teacher and removal from the classroom prior to hearing is an unconstitutional deprivation of rights; and that section 3020-a does not permit suspension without pay in any event — have been considered in a recent opinion by the Appellate Division, Fourth Department, in Matter of Jerry v. Board of Educ. and Matter of Soda v. Christner (44 A D 2d 198). It was decided in those cases on simlar facts that denial of compensation to a suspended teacher with tenure “until a final determination [of charges] after a meaningful hearing, except in cases of unusual circumstances which are not present in the instant cases, would not fulfill the promise of the due process clause ” (Matter of Jerry v. Board of Educ., supra, p. 204). That court also concluded that charges against a tenured teacher of physical restraint and punishment of pupils, justified suspension of the teacher by removal from the classroom prior to hearing. In view of the extended treatment of those issues in that opinion, there is no need to discuss the arguments addressed to these issues by plaintiffs’ counsel here, since the charges against the teacher in Jerry were similar in nature and content, and like Jerry, no unusual circumstances have been presented which could require denial of compensation here until the charges are determined.
Accordingly, the District has the right to suspend the plaintiff teachers and require their removal from the classroom on the charges made, but must compensate them for back pay and continue to pay them their regular salaries pending a hearing and determination on those charges.
*99 Summary judgment is therefore granted the plaintiffs Elmer F. Hodgkins and Eugene Clayton to the extent that the defendant Central School District No. 1 of the Towns of Conklin, Binghamton, Kirkwood and Vestal, Broome County, New York, is (a) enjoined from suspending the pay and compensation of plaintiffs Elmer F. Hodgkins and Eugene Clayton pending the hearing on charges and determination contemplated by section 3020-a of the Education Law and the regulations of the Commissioner of Education as amended; and (b) is directed to pay compensation due them from the date of suspension accordingly.
Summary judgment is otherwise granted to the defendant Central School District No. 1 of the Towns of Conklin, Binghamton, Kirkwood and Vestal, Broome County, New York, affirming and declaring their right to suspend the plaintiffs Elmer F. Hodgkins and Eugene Clayton and to remove them from' their teaching duties pending a hearing on charges as contemplated by section 3020-a of the Education Law and the regulations of the Commissioner of Education as amended.
The parties are directed 'to proceed to hearing forthwith, with leave to the defendant Central School District No. 1 of the Towns of Conklin, Binghamton, Kirkwood and Vestal, Broome County, New York, to apply to vacate any order directing the continuation of payment of compensation to plaintiffs Elmer F. Hodgkins and Eugene Clayton if hearings are unduly delayed by action on their part.
The rights and duties of the parties are otherwise declared in accordance with this opinion which shall constitute the applicable findings of fact and conclusions of law.

 Amendment to regulations of the Commissioner of Education, pursuant to section 3020-a of the Education Law.
“1. Subdivision (h) section 82.10 of the Regulations of the Commissioner of Education is amended, effective February 28,1974, as follows:
“ (h) The findings of the panel on each charge, and the recommendations of the panel as to disciplinary action, if any, against the employee shall be submitted to the hearing officer, together with the panel members’ copies of the transcript, no later than the adjourned date of the hearing. Upon receipt of such findings and recommendations, the hearing officer shall declare the hearing concluded, and shall forward the findings and recommendations, together with the three copies of the transcript, to the commissioner. The commissioner shall forward a report of ¡¡the hearing, including the findings and recommendations of the hearing panel and their jrecommendations as to the penalty if one is warranted, together with a copy 'of the transcript of the proceedings before the hearing panel, to the employee and to the clerk of the employing board.” (Italics supplied.)
“ 2. The Regulations of the Commissioner of Education are amended, effective February 28,1974, by the addition of a new section 82.11 to read as follows:
“ Section 82.11 Decision of the board. The decision of the board of education shall be based solely upon the record in the proceedings before the hearing panel, and shall set forth the reasons and the factual basis for the determination.”