Donald M. KINSELLA, Plaintiff,

v.

BOARD OF EDUCATION OF CENTRAL SCHOOL DISTRICT NO. 7 OF the TOWNS OF AMHERST AND TONAWANDA, ERIE COUNTY and Ewald B. Nyquist, Commissioner of Education of the State of New York, Defendants.

Civ. No. 1973–187.

United States District Court, W. D. New York.

Oct. 21, 1975.

Bernard F. Ashe, and James R. Sandner, Albany, N. Y., for plaintiff.

Ohlin, Damon, Morey, Sawyer & Moot, Buffalo, N. Y. (James S. McAskill, Buffalo, N. Y., of counsel), Thomas L. David, Buffalo, N. Y., for defendant Central School District No. 7.

Louis J. Lefkowitz, Atty. Gen., of the State of New York (Douglas S. Cream, Asst. Atty. Gen., of counsel), for defendant Nyquist.

CURTIN, Chief Judge.

Plaintiff Donald M. Kinsella, a tenured school teacher employed by defendant school district, originally brought suit to declare § 3020–a of the New York Education Law unconstitutional. That section outlines the procedures to be followed in a dismissal hearing. In a decision dated February 19, 1974, a three-judge district court held § 3020–a unconstitutional because it did not require the decision of the Board of Education to be based exclusively on evidence produced before the hearing panel, and because the Board did not have to state the factual basis and the reasoning on which it based its decision. *Kinsella v. Board of Education*, 378 F.Supp. 54 (W.D.N.Y.1974). The court granted plaintiff his request for an injunction, stating that "defendants are enjoined from its [3020–a] enforcement until such time as appropriate administrative or legislative action is taken to remedy the defects in the procedures here involved." 378 F.Supp. at 60.

Neither side appealed the decision. On February 28, 1974, the New York State Board of Regents approved amended regulations, proposed by the Commissioner of Education, that conformed § 3020–a to the three-judge court's decision. 8 N.Y.C.R.R. 82.10(h), 82.11 (as amended, February 28, 1974).

Thereafter, the tenure hearing which had been enjoined by the court's order was resumed, with the plaintiff participating. The hearing panel reported its recommendations to the Board of Education; the transcript of the hearing was forwarded to the Board; and the Board then rendered its decision dismissing plaintiff on July 25, 1974.

On November 22, 1974 plaintiff brought these motions for supplementary relief. In motion I, plaintiff claims that the injunction against implementation of § 3020–a is still in force because the new regulations of the Board of Regents were not legally approved under New York statutes. He asks that those amended regulations and the hearing held under them be declared void. Plaintiff does not challenge the content of the amended regulations in motion I, only the procedures by which they were enacted. In motion II, plaintiff argues that *Arnett v. Kennedy,* 416 U.S. 134, [94 S.Ct. 1633, 40 L.Ed.2d 15] (1974), requires further protections to be accorded the plaintiff, and that the tenure hearing procedures and the tenure hearing itself lacked due process.

■ Plaintiff originally brought this action under 42 U.S.C. § 1983, with jurisdiction under 28 U.S.C. § 1343(3), (4). A three-judge district court was convened pursuant to 28 U.S.C. § 2281.[1]

■ Plaintiff argues in motion I that this court should exercise its discretion and decide the state law issue under the pendent jurisdiction doctrine. The parameters of the court's discretion under the pendent jurisdiction doctrine are far from precise. But, for reasons stated below, this court declines to review the legality of the amended regulations.[2]

Numerous factors influence a court in considering a pendent jurisdiction question. There must exist a federal claim of sufficient weight to give the court jurisdiction and both the state and federal claims must be based on essentially the same facts. The claims must be so related that they present the court with one constitutional "case." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966). Other factors to consider are judicial economy and convenience and fairness to litigants. But, even if these factors are present, the decision is still discretionary with the court. *Gibbs,* at 726, 86 S.Ct. 1130.

---

1. On this application for supplementary relief, plaintiff cites 28 U.S.C. § 2202 as his jurisdictional basis. This section does not confer jurisdiction on any court. It merely creates a remedy:

   [T]he Declaratory Judgment Act is not a jurisdictional statute. It does not create subject matter jurisdiction where none otherwise exists. It only creats [sic] a particular kind of remedy available in actions where the district court already has jurisdiction to entertain a suit.

   *Jarrett v. Resor,* 426 F.2d 213, 216 (9th Cir. 1970).

2. It is noteworthy to point out that subsequent to the three-judge court decision, but before the plaintiff's motions for supplementary relief, two other tenured school teachers sought in state court to enjoin another school district from proceeding under the same revised regulations that are attacked here. It was there argued that the regulations were illegally amended and therefore void under *Kinsella.* That court ruled that the actions of the Commissioner of Education and the State Board of Regents in amending § 3020–a were proper. *Hodgkins v. Cent. School Dist. No. 1,* 355 N.Y.S.2d 932 (Sup.Ct., Broome Co. 1974), aff'd, App. Div., 368 N.Y.S.2d 891 (3rd Dept., June 12, 1975). The Appellate Division's unanimous decision declared that "[t]he regulations . . . are clearly within the scope of these . . . powers which the Legislature has granted to the Commissioner and the Board of Regents under the Education Law." At 894 (1975).

In this case plaintiff's claim in motion I is not truly pendent to a constitutional claim. The question presented by it, though related to plaintiff's original action, is a by-product of that case. In the original action, plaintiff argued that § 3020–a was unconstitutional because of intrinsic due process shortcomings in the provided procedures. And in motion II, plaintiff argues that there are still constitutional defects in the procedures themselves. But the state law issue presents a separate question—whether the dismissal procedures were properly amended under state law. This does not present this court with one constitutional "case." *See Gibbs, supra.*

In footnote 4 to the three-judge court decision, notice was taken of the then pending Supreme Court ruling in *Arnett v. Kennedy.* In that case the discharge procedures for federal competitive service employees under the Lloyd-La Follette Act, 5 U.S.C. § 7501, were being challenged. The *Kinsella* court said that "[s]ince the provisions of § 3020–a resemble, in some respects, those of 5 U. S.C. § 7501, our decision here will have to be applied with deference to the Court's decision when handed down." 378 F.Supp. 54, 59 n. 4. (W.D.N.Y. 1974). The Supreme Court decided *Arnett* on April 16, 1974.

▮▮▮▮ This court initially looks at plaintiff's request for a re-convening of a three-judge court. A prerequisite to a three-judge court is a substantial federal question. *Ex parte Poresky,* 290 U.S. 30, 31, [54 S.Ct. 3, 78 L.Ed. 152] (1933). The judgment on the substantiality of the federal claim is within the province of the single judge district court. 290 U.S., at 32, 54 S.Ct. 3.

The Supreme Court recently discussed the question of "constitutional insubstantiality":

"Constitutional insubstantiality" for this purpose has been equated with such concepts as "essentially fictitious," *Bailey v. Patterson,* 369 U.S. [31], at 33 [82 S.Ct. 549, at 551, 7 L. Ed.2d 512] "wholly insubstantial,"

*ibid.;* "obviously frivolous," *Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288 [30 S.Ct. 326, 327, 54 L.Ed. 482] (1910); and "obviously without merit," *Ex parte Poresky,* 290 U.S. 30, 32 [54 S.Ct. 3, 4–5, 78 L.Ed. 152] (1933). The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281.

*Goosby v. Osser,* 409 U.S. 512, 518, [93 S.Ct. 854, 858, 35 L.Ed.2d 36] (1973).

*Arnett v. Kennedy* upheld the challenged discharge procedures of the Lloyd-La Follette Act. That decision by the Court would appear to obviate the cautionary statement by the *Kinsella* court in footnote 4. The plaintiff here argues, however, that if the *Arnett* opinion is carefully dissected, it still calls for stricter procedural due process safeguards than *Kinsella* and that, therefore, these safeguards must be read back into *Kinsella's* holding. After close study of *Arnett,* we think the federal question posed by plaintiff in this action is insubstantial and does not merit the review of a three-judge district court.

The *Arnett* case produced five separate opinions spanning ninety-five pages. Mr. Justice Rehnquist announced the plurality opinion of the Court. He, Chief Justice Burger, and Justice Stewart agreed that

[T]he Lloyd-La Follette Act, in at once conferring upon nonprobationary federal employees the right not to be discharged except for "cause" and prescribing the procedural means by which that right was to be protected, did not create an expectancy of job retention in those employees requiring procedural protection under the Due

Process Clause beyond that afforded here by the statute and related agency regulations.

416 U.S. 134, 163, [94 S.Ct. 1633, 1649, 40 L.E.2d 15] (1974).

Mr. Justice Powell and Mr. Justice Blackmun also agreed that no procedural due process violation occurred, but for different reasons. They argued that the due process standard, by which the discharge procedures must be tested, cannot be defined by the statute which established the employees' position: "This view misconceives the origin of the right to procedural due process. That right is conferred not by legislative grace but by constitutional guarantee." 416 U.S., at 167, [94 S.Ct. at 1650]. The real question to be answered, they argued, was whether due process required a full evidentiary hearing *before* final removal. The Justices ruled it did not. Noting that a balancing process had to be applied between the governmental and private interests asserted,[3] these two Justices held that the Lloyd-La Follette procedures were consistent with constitutional due process norms.

Justice White, in a separate opinion, likewise reached the conclusion that "[w]hile the State may define what is and what is not property, once having defined those rights the Constitution defines due process." 416 U.S., at 185, [94 S.Ct. at 1660]. Before a competitive civil service employee could be finally terminated, Justice White held, due process required a hearing. Since the Lloyd-La Follette Act provided for a full trial type hearing before final termination, Justice White concluded that the Constitution and the law "converged."

As this court reads the *Arnett* scorecard, these six Justices ruled the Lloyd-La Follette Act's dismissal procedures constitutionally sufficient, though for different reasons. Do any of these different reasons affect the *Kinsella* decision? Mr. Justice Powell does point out in his opinion that the Lloyd-La Follette Act mandates written notice of charges be given to the employee thirty days before removal. This affords the employee an opportunity to answer the charges and try to persuade the official not to dismiss him. A full hearing is then held, post dismissal. 416 U.S., at 170, [94 S.Ct. 1633].

The § 3020-a procedure is not identical to the Lloyd-La Follette Act, nor does the *Arnett* case require it to be. Under § 3020-a, no dismissal can be final without a hearing. Whether or not the *Arnett* case *requires* written charges to be given the employee in *all* dismissal procedures under any type of statute, before any type of suspension can be imposed, does not need to be decided at this time. Mr. Kinsella was given written notice of the charges against him, before his hearing, and he was not suspended[4] prior to the termination hearing. The *Arnett* case has not provided this plaintiff with a substantial constitutional claim under the *Kinsella* decision in this regard.

The plaintiff also argues that the Board of Education is not an impartial hearing examiner, as due process requires, because the Board decides both the initial probable cause question and the final determination on dismissal. The three-judge court found no due process violation in this procedure. 378 F.Supp., at 60. The effect of the *Arnett* decision on this matter does not raise a substantial federal question. The Court in *Arnett* dealt with the situation where the hearing examiner himself was the target of the employee's behavior that was the basis for the charges against the employee. Such is not the situation here. In any event, Justice White noted that the Court "need not hold that the Lloyd-La Follette Act is unconstitutional

---

3. *See Goldberg v. Kelly*, 397 U.S. 254, 262–266, [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970).

4. The New York Court of Appeals recently held that § 3020-a does not permit suspension of a teacher without pay. *Jerry v. Bd. of Ed.*, 35 N.Y.2d 534, 364 N.Y.S.2d 440, [324 N.E.2d 106] (1974).

for its lack of provision of an impartial hearing examiner." 416 U.S., at 199, [94 S.Ct. at 1666].

Neither does the *Arnett* case raise a substantial federal question with respect to plaintiff's claim that the hearing must be actually held before the body that finally determines the issue. The *Kinsella* decision mandated changes in the procedures to insure that the Board's decision was based on evidence produced before the hearing panel. In this respect the hearing panel is akin to a special master. *See Buck v. Board of Education,* (E.D.N.Y.1974).

Finally, the plaintiff claims that the Board of Education's decision is so deficient in content as to be violative of the *Kinsella* court's mandate that it be "based upon evidence elicited before the hearing panel and the decision of the Board to set forth the reasons and factual basis therefor." 378 F.Supp., at 60. Under *Kinsella* and *Arnett,* and previous Supreme Court cases, this does not raise a substantial constitutional question either.[5]

For all the reasons stated above, this court denies both plaintiff's motions for supplementary relief.

So ordered.

---

5. *Goldberg v. Kelly, supra,* involved welfare fair hearings:

[T]he decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. [Citations omitted.] To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on, [citations omitted] though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law. 397 U.S., at 271, 90 S.Ct. at 1022.