**Amalia Sabina PELUPO de TOLEDO, Plaintiff,**

**v.**

**Maurice F. KILEY, District Director Immigration and Naturalization Service of New York, Defendant.**

**No. 77 C 1333.**

United States District Court, E. D. New York.

July 21, 1977.

---

Memorandum of Decision and Order

MISHLER, Chief Judge.

Petitioner, by order to show cause dated June 24, 1977, applies for an order staying her deportation. The petitioner bases her right to relief on statements contained in applications for: (a) a stay of deportation (filed June 15, 1977); and (b) the suspension of deportation (filed June 20, 1977). Two days prior to the June 29, 1977 oral argument, the district director denied petitioner's application for a stay. The petition for suspension pends undecided as of the date of this memorandum of decision.[1] The following facts are admitted or not challenged for the purpose of this proceeding:

On June 7, 1970, the petitioner entered the United States from Columbia on a visitors visa valid for a period of thirty (30) days. Approximately two weeks later, on June 25, 1970, she took employment at Barney's Clothes, Inc. in violation of the conditions of entry. She overstayed the period of her visit and never left the country. On May 18, 1973, the Immigration and Naturalization Service ("INS") served notice on petitioner to show cause why she should not be deported. Shortly thereafter, on June 1, 1973, petitioner married one Manuel Toledo. She nevertheless appeared at the scheduled hearing before an INS Special Inquiry Officer on June 12, 1973. Petitioner admitted that she was here unlawfully, and pursuant to her request, was granted the privilege of voluntary departure until September 12, 1973, in lieu of deportation. Petitioner then left the hearing only to file an application, that very same day, for the issuance of an immigrant visa based on her marriage to a United States citizen (Form 1–130).

INS questioned the bona fides of the marriage. Several requests were made for interviews, but petitioner and her spouse failed to respond.[2] Instead, petitioner continuously changed her address without noti-

Antonio C. Martinez, New York City, for plaintiff.

David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N.Y., for defendant; Ralph L. McMurry, Asst. U. S. Atty., of counsel.

1. The application for suspension has been forwarded to an Immigration Judge.

2. Petitioner's counsel states that petitioner " . . . was not hiding from Immigration Service since she did appear with her husband, Manuel Toledo, in November 1973, for an interview on her husband's petition and later had

contact with the Service." On the other hand, her application for suspension of deportation concedes that she failed to comply with the Alien Registration Act and Immigration and Nationality List as she did not supply her address annually.

fying the district director, thus frustrating the efforts of INS investigators. While the search went on, petitioner gave birth to a child—Marylin Pastrana—on March 6, 1976. Although Manuel Toledo allegedly fathered the child, petitioner claims he abandoned her during pregnancy. The birth certificate indicates that one, Camilo Pastrano, a friend, was the father.

Petitioner's 1–130 application was finally dismissed for lack of prosecution on June 21, 1976. A warrant of deportation issued on January 17, 1977, and on May 4, 1977, petitioner was apprehended by INS investigators. The delay in deportation from that day until the institution of this proceeding was occasioned by petitioner's failure to supply travel documents. She is presently in custody pending the determination of the instant petition.

Petitioner claims a right to a stay pending the determination of her application for suspension of deportation on two grounds: (1) that she comes within the class of aliens described in *Silva v. Levi*, Docket No. 76 C 4268, N.D.Ill. March 10, 1977); and (2) that she " . . . is prima facie eligible for the benefits of . . . " Section 244(a)(1) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1254(a)(1).[3]

## SCOPE OF REVIEW

The petition seeking review of the district director's refusal to stay the deportation order on the ground that such administrative action was " . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706, is based, in turn, on a claim that the application for suspension of deportation is meritorious. Though respondent points to petitioner's failure to exhaust administrative remedies before filing the petition, *Florentine v. Landon*, 206 F.2d 870, 871 (9th Cir. 1953), *cert. denied*, 347 U.S. 927, 74 S.Ct. 530, 98 L.Ed. 1080 (1954) the court assumes that respondent prefers to reach the merits. See *McGee v. United States*, 402 U.S. 479, 483–484, 91 S.Ct. 1565, 1568–69, 29 L.Ed.2d 47 (1971); *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

 The district director is vested with discretionary authority to stay an order of deportation.[4] The district director may also within his discretion deny suspension of deportation where aliens deliberately violate immigration laws and orders, *United States ex rel. Ciannamea v. Neelly*, 202 F.2d 289 (7th Cir. 1953), or delay deportation in order to establish the necessary qualifying residence period. *Goon Wing Wah v. Immigration and Naturalization Service*, 386 F.2d 292 (1st Cir. 1967). The district court, in turn, has habeas corpus jurisdiction to review the denial of any stay. *Cheng Fan Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). That review is limited, however; the court may inquire only as to " . . . whether there has been any abuse of administrative discretion." *Foti v. Immigration and Naturalization Service*, 375 U.S. 217, 228, 84 S.Ct. 306, 313, 11 L.Ed.2d 281 (1963). The district director's denial constitutes an "abuse of discretion"

---

3. Section 244(a)(1) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1254(a)(1), states in pertinent part:

(a) " . . . the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States . . .; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States. . . . "

4. 8 C.F.R. § 243.4 provides:

*Stay of Deportation* Any request by an alien under a final administrative order of deportation for a stay of deportation, . . . ., shall be filed on Form 1–246 with the district director having jurisdiction over the place where the alien is at the time of filing. The district director, in his discretion, may grant a stay of deportation for a such time and under such conditions as he may deem appropriate.

" . . . if it [is] made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as an invidious discrimination against a particular race or group . . .." *Bolanos v. Kiley*, 509 F.2d 1023, 1026 (2d Cir. 1975), *quoting Wong Wing Hang v. Immigration and Naturalization Service*, 360 F.2d 715, 719 (2d Cir. 1966).[5]

## SILVA V. LEVI—RESTRAINING PROVISION

 Petitioner's claim that she comes within the class of persons under the protection of Judge Grady's order of March 10, 1977 is rejected. The class is defined as "[a]ll persons from the Western Hemisphere who have priority dates between July 1, 1968 and December 31, 1976 inclusive." The preference granted Western Hemisphere aliens by Section 245(c) of the Immigration and Nationality Act, 8 U.S.C. § 1255(c), does not give automatic permanent status. A petition for such must be filed in accordance with the requirements of 8 C.F.R. § 204.1 either by an American citizen or an alien lawfully admitted for permanent residence, and the petition is considered only after investigation by the Attorney General to determine whether the facts stated in it are true, 8 U.S.C. § 1154(b). Petitioner's application for priority status was dismissed for failure to prosecute. She is not a member of the class defined in *Silva v. Levi*.

## FAILURE TO DEPART VOLUNTARILY AND DILATORY TACTICS EMPLOYED

The administrative record indicates that at the June 12, 1973 deportation hearing, petitioner represented that she had a paid ticket to return to Columbia via Avianca Airlines. Upon a finding of deportability by a Special Inquiry Officer, she was granted voluntary departure until September 12, 1973.[6] At the time of the hearing she reported her address as 104 Hicks Street (Apt. 15D), Brooklyn, New York. She was later interviewed on October 15, 1974, at her place of employment, where she advised the investigator that she lived at 1731 Harrison Avenue, Bronx, New York. The investigator called at that address on December 27, 1974, but petitioner stated her husband had already left for work; that she did not know where to contact him; and that she could not submit to an interview. Letters to petitioner and her attorney dated January 12, 1976, and April 14, 1976, requesting that they call the investigator were not answered. When petitioner was finally apprehended on May 4, 1977, she failed to produce the necessary travel documents. Deportation was, therefore, delayed, and the seven year statutory period ran.

The court in *Fan Wan Keung v. Immigration and Naturalization Service*, 434 F.2d 301, 306 (2d Cir. 1970), discussing the practice of INS, granting a second voluntary departure (since abandoned), cited with approval *In the Matter of M*, 4 I&N Dec. 626, 628 (1952):

> An alien who once was granted voluntary departure and who is found here illegally, does not merit a second chance for such departure in the absence of very strong extenuating circumstances.

> . . . An alien should not be permitted to prolong his illegal presence in this country by failure to apply for or accept voluntary departure until he has brought his case, through various procedural steps, to the last authority where such relief may be granted. (citations omitted).

 It is unlikely that the Congress, in fixing the seven year qualifying period, intended that the time during which an alien breaches her agreement to depart voluntarily be credited to her. Had petitioner departed as promised and returned, the period would have been computed from the date of re-entry, *Segura-Viachi v. Immigration and Naturalization Service*, 538 F.2d 91, 92 (5th Cir. 1976). It would appear illogical to disadvantage an alien who had fulfilled his

---

5. The decision of the district director denying the stay of deportation is appended to this memorandum of decision.

6. Petitioner was represented by counsel.

agreement to depart by not crediting him with the time of his presence before departure, and on the other hand, reward an alien who had violated her agreement, by disregarding the breach in such computation. The "purposeful pattern" of delay was denounced in *Fan Wan Keung, supra* at 303.[7] This court, in its further research, was unable to find any discussion on the question of how to treat time gained by an alien through the violation of a voluntary departure agreement or a delay in deportation induced by his refusal to turn over travel documents and comply with a deportation order. In considering a stay of deportation, the district director may consider the history of petitioner's violations. *Buckley v. Gibney*, 332 F.Supp. 790, 795 (S.D.N.Y.), *aff'd without opinion*, 449 F.2d 1305, (2d Cir. 1971), *cert. denied*, 405 U.S. 919, 92 S.Ct. 946, 30 L.Ed.2d 789 (1972).

## GOOD MORAL CHARACTER

■ A permissible inference from the documentary proof and explanation given by petitioner as to the reason her child's birth certificate bore the name of Camilo Pastrana is that indeed he was the father of her child and that she lived with Pastrana while married to de Toledo.[8] This is not a case of a married woman establishing a meretricious relationship after her husband has abandoned her, *Wadman v. Immigration and Naturalization Service*, 329 F.2d 812, 817 (9th Cir. 1964). As late as December 27, 1974 (approximately two months prior to the birth), petitioner indicated to an INS investigator that her husband resided with her, *cf. Moon Ho Kim v. Immigration and Naturalization Service*, 168 U.S.App.D.C. 283, 514 F.2d 179 (D.C. Cir. 1975).

## CLAIM OF EXTREME HARDSHIP

■ Petitioner suggests that her temporary separation from her child, a United States citizen, during the period of detention while awaiting deportation requires intervention by the court. No express claim is made of extreme hardship except in the general allegation that she "is prima facie eligible for the benefits of § 244(a)(1), I.N. Act (U.S.C. § 1254). (sic)"

The short answer to the claim of hardship arising from her present custody is that the problem was self-induced. Another answer relates to the basic issue presented here, i. e., whether the district director acted arbitrarily and capriciously. "[A]n infant's status as a citizen and his dependence on his alien parent do not prevent the deportation of the alien parent." *Encisco-Cardozo v. Immigration and Naturalization Service*, 504 F.2d 1252, 1253 (2d Cir. 1974). The fact that deportation of the mother will result in the de facto deportation of the daughter, a citizen of the United States, does not nullify ". . . the underlying deportation order of the parent or render it arbitrary or capricious," *Aalund v. Marshall*, 461 F.2d 710, 714 (5th Cir. 1972); *see also Faustino v. Immigration and Naturalization Service*, 432 F.2d 429 (2d Cir. 1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971).

## DECISION AND ORDER

For the foregoing reasons the court finds that the denial by the district director of the stay of the deportation order was not arbitrary or capricious.

The petition for a writ of habeas corpus is dismissed. The Clerk of the Court is directed to enter judgment in favor of respondent and against petitioner dismissing the petition, and it is

SO ORDERED.

## APPENDIX

Amalia PELUFFO–DIAZ

c/o USINS DETENTION

---

**7.** In *Acevedo v. Immigration and Naturalization Service*, 538 F.2d 918, 920 (2d Cir. 1976), the court referred to the abuse of judicial process in bringing baseless claims "where the af-

·fect is to give the deportable alien the benefit of continued residence in the United States . .."

**8.** The birth certificate bears her maiden name, i. e., Amalia Pelufo (or Peluffo).

Dear Madam:

Reference is made to an application for a Stay of Deportation and an application for Suspension of Deportation filed in your behalf by your attorney on June 20, 1977. A review of the record reveals that you last entered the United States on or about June 1971 as a visitor for pleasure and were authorized to remain until July 1971. At a deportation hearing held on June 12, 1973 you were granted the privilege of voluntary departure until 9–12–73. A further review of the record reflects that you married a Manuel Toledo on June 1, 1973. I–130 application was filed in your behalf on June 12, 1973 which was subsequently denied due to lack of prosecution on June 12, 1976. On 1–17–77 a Warrant of Deportation was issued. You failed to surrender for deportation on 2–15–77. On May 4, 1977 you were apprehended by Service Investigators, at which time you stated that you did not know the whereabouts of your husband. You also stated you did not have any other ties in the United States. A copy of the birth certificate now presented for your child born on 3–6–75 show that Camilo Pastrana as the father, a Colombian citizen. The record shows that the marriage to Manuel Toledo is not a stable or lasting one. Any benefits that you might receive as a result of the marriage would be contrary to the intent of the law.

On June 12, 1973 at a deportation hearing you admitted to an Immigration Judge that you entered the United States in June 1971 and were authorized to remain until July 1971. In your application for Suspension of Deportation you claimed you entered on June 16, 1970. You have not only failed to submit proof in the form of a I–94, and you have not presented a valid passport in accordance with the instructions on form I–246.

Since your entry into the United States you have been in violation of Immigration laws. You have been gainfully employed at various jobs since 1971. You did not depart according to the Order of the Immigration Judge nor did you request any extensions. During the pendency of the I–130 application you continuously ignored request to come in for interviews with your spouse. You have changed your address several times and failed to inform the Service of your location.

Please be advised that your application for a Stay of Deportation has been denied. Be further advised that your application for suspension of deportation will be forwarded to the Immigration Judge for appropriate action.

> Very truly yours,
>
> s/ Maurice F. Riley
> DISTRICT DIRECTOR
> NEW YORK DISTRICT