Rachelle Hana PAPAKONSTANTINOU, an infant, by her father George Papakonstantinou, and George Papakonstantinou, Plaintiffs,

v.

Benjamin J. CIVILETTI, Attorney General of the United States of America, et al., Defendants.

No. 76 C 1379.

United States District Court, E. D. New York.

July 30, 1980.

---

John C. Gray, Jr., Brooklyn Legal Services Corp. B by Lloyd E. Constantine, Brooklyn, N. Y., for plaintiffs.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y. by Richard P. Caro, Asst. U. S. Atty., Brooklyn, N. Y., for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiffs, an alien subject to an outstanding order of deportation and his minor citizen daughter, seek declaratory and injunctive relief against enforcement of sections 201(a) and (b), 101(a)(27)(A), and 212(a)(14) of the Immigration and Nationality Act of 1952, 8 U.S.C. §§ 1151(a), (b), 1101(a)(27)(A), and 1182(a)(14) (1976) ("Act"). They claim that § 201, insofar as it denies "immediate relative" status to the alien parent of a citizen child who is under the age of twenty-one, as applied to them produces a result not intended by Congress, and, in any event, is violative of equal protection principles and hence unconstitutional on its face and as applied to them. Plaintiffs further claim that §§ 101(a)(27)(A) and 212(a)(14) are unconstitutional on their face and as applied in that they differentiate between citizens of eastern hemisphere countries and citizens of western hemisphere countries without justification, and request that a three-judge court be convened pursuant to 28 U.S.C. §§ 2282, 2284 (1976). The action is now before the court on defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Rule 12(b)(6), F.R.Civ.P., and in opposition to the convening of a three-judge court. For the reasons stated hereafter, defendants' motion is granted.

■ Contrary to defendants' arguments, this court has jurisdiction over the subject matter under § 279 of the Act, 8 U.S.C. § 1329 (1976), which states, in pertinent part, that "[t]he district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter." Sections 201 and 212 of the Act, the sections over which this dispute arises, are contained within subchapter II, to which § 279 is explicitly applicable.

■ The courts of appeals, since 1961, undeniably have had exclusive jurisdiction to review "final orders of deportation," § 106, Act of 1952, 8 U.S.C. § 1105a, as amended by § 5(a), Act of Sept. 26, 1961, Pub.L. No. 87–301, 75 Stat. 651, but it is now well settled that § 106(a) does not confer jurisdiction on the courts of appeals to review determinations of immigration authorities not made in the course of § 242(b) deportation proceedings. *Cheng Fan Kwok v. INS,* 392 U.S. 206, 216, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968). The district courts, rather, have the authority to review determinations ancillary to deportation orders, even if such determinations will effectively control whether or not a given alien will be deported, so long as the administrative decision sought to be reviewed was not entered pursuant to a § 242(b) proceeding. *Cheng Fan Kwok v. INS, supra; Butterfield v. INS,* 409 F.2d 170, 173 (D.C.Cir. 1969). See *Acosta v. Gaffney,* 558 F.2d 1153, 1156–57 (3d Cir. 1977); *Waziri v. INS,* 392 F.2d 55, 56–57 (9th Cir. 1968); *Nasan v. INS,* 449 F.Supp. 244, 247 (N.D.Ill.1978); *United States ex rel. Parco v. Morris,* 426 F.Supp. 976, 978 n.4 (E.D.Pa.1977); *Manarolakis v. Coomey,* 416 F.Supp. 532, 534 n.1 (D.Mass.1976); *Shodeke v. Attorney General of the United States,* 391 F.Supp. 219, 222 (D.D.C.1975). But see *Roumeliotis v. INS,* 304 F.2d 453, 455 (7th Cir.), *cert. denied,* 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed.2d 230 (1962). Accordingly, we turn to the merits of the action.

The facts are not in dispute. On October 16, 1971, plaintiff George Papakonstantinou, a Greek citizen, entered the United States at the port of New York as a crewman on a Greek shipping vessel. He deserted ship, held several temporary jobs, and on August 9, 1972, married Dorothy Nash, an American citizen. One week after the wedding, Nash filed an INS I–130 petition on behalf of her husband to have him classified as an "immediate relative," which, if approved, would exempt him from the quota restrictions of § 201 of the Act. The petition was approved and plaintiff was given

until January 22, 1974, to leave the country to obtain his visa. He never obtained such a visa. On March 3, 1973, plaintiff Rachelle Papakonstantinou was born. She has lived with her mother since her birth, and in July 1976 was placed in her mother's legal custody pursuant to a divorce decree entered in New York Supreme Court, Kings County (Plaintiffs' Exhibit D), under which her father exercises weekly visitation rights.

On March 7, 1976, the Immigration and Naturalization Service ("INS") ordered plaintiff to show cause why he should not be deported. At a hearing before an immigration judge, in lieu of contesting his deportability, plaintiff on advice of counsel was granted permission to depart voluntarily from the United States on or before July 30, 1976, or be deported. On July 23, 1976, plaintiff commenced this lawsuit and moved by order to show cause for a temporary restraining order to stay the order requiring him to depart. Judge Costantino of this court restrained enforcement of the departure order contingent upon plaintiffs petitioning INS on or before August 3, 1976, to classify George Papakonstantinou as an "immediate relative" of his infant daughter. A petition, filed with INS on August 2, 1976, was denied by the New York District Director on August 25, 1976.

In the interim, plaintiffs moved by order to show cause for a preliminary injunction based on their "first claim for relief" (Verified Complaint ¶¶ 47–51) and for appointment of a guardian ad litem for plaintiff Rachelle Papakonstantinou. On September 7, 1976, Judge Costantino extended the stay of enforcement of the departure order pending administrative appeal of the District Director's decision, and reserved decision on the motion for appointment of a guardian ad litem. On March 9, 1977, the Board of Immigration Appeals dismissed plaintiffs' appeal from the District Director's determination that a citizen child under age twenty-one could not confer "immediate relative" status on her alien parent. On April 15, 1977, plaintiffs petitioned for review of the Board's dismissal to the United States Court of Appeals for the Second Circuit.

On April 27, 1977, staff counsel for the Court of Appeals held a conference at which INS was represented by the United States Attorney for the Southern District of New York. Relying on *Cheng Fan Kwok v. INS, supra,* the parties concluded that jurisdiction to review the INS denial of plaintiffs' petition lay in the district court rather than in the Court of Appeals. A stipulation withdrawing the petition for review was executed.

On May 12, 1977, Judge Costantino recused himself and the case was reassigned. The court thereafter informed the parties that decision on plaintiffs' motion for a preliminary injunction would be withheld pending congressional action on the Carter Administration's "amnesty bill," which would have granted temporary residence status for five years to persons in the plaintiff father's situation. When, following the passage of a lengthy period, it became evident that no action would be taken on the "amnesty bill," defendants moved to dismiss the complaint. At a pretrial conference on November 9, 1979, plaintiffs renewed their request for a preliminary injunction and for appointment of a guardian ad litem, and also requested leave to amend the complaint to state an additional claim for relief. The court directed that all matters be held in abeyance until resolution of the instant motion.[1]

Plaintiffs' statutory argument, made in their "first claim for relief," is that Congress did not intend to deny "immediate relative" status to the alien parent of a citizen child under age twenty-one, where, as here, denying such status effectively results in the separation of parent and child. Subsections (a) and (b) of § 201 of the Act, 8 U.S.C. § 1151(a), (b) (1976), defining "immediate relative" for purposes of the quota exceptions, provide as follows:

1. For the purposes of this motion, the court assumes that plaintiff George Papakonstantinou has standing to assert the rights of his daughter. But see N.Y.Civ.Prac. § 1201 (McKinney 1976), and affidavit of Dorothy Nash filed September 13, 1976.

"(a) Exclusive of special immigrants defined in section 1101(a)(27) of this title, and of the immediate relatives of United States citizens specified in subsection (b) of this section, the number of aliens who may be issued immigrant visas or who may otherwise acquire the status of an alien lawfully admitted to the United States for permanent residence, or who may, pursuant to section 1153(a)(7) of this title enter conditionally, (i) shall not in any of the first three quarters of any fiscal year exceed a total of 45,000 and (ii) shall not in any fiscal year exceed a total of 170,000.

"(b) The 'immediate relatives' referred to in subsection (a) of this section shall mean the children, spouses, and parents of a citizen of the United States: *Provided*, That in the case of parents, such citizen must be at least twenty-one years of age. The immediate relatives specified in this subsection who are otherwise qualified for admission as immigrants shall be admitted as such, without regard to the numerical limitations in this chapter."

█ Where a statute is clear and unambiguous on its face, resort to legislative history in aid of interpretation is unnecessary. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n.29, 98 S.Ct. 2279, 2296, 57 L.Ed.2d 117 (1978); *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Section 201(b) means what it says: the parent of a citizen child under the age of twenty-one is not an "immediate relative" for purposes of subsection (a) of § 201. By its language, therefore, Congress intended to deny "immediate relative" status to aliens such as George Papakonstantinou based on a minor child's citizenship, notwithstanding occasional hardship or separations such classification might occasion.

█ Next, plaintiffs demand that a three-judge court be convened because they seek an injunction to restrain the enforcement of an Act of Congress on the ground that it is unconstitutional. Since this action was commenced before the repeal of 28 U.S.C. § 2282 (repealed August 12, 1976, Pub.L. 94-381, §§ 2, 7, 90 Stat. 1119), that section is applicable. 28 U.S.C. § 2282 (1970) provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

But neither § 2282 nor § 2284, 28 U.S.C., both cited by plaintiffs, requires a district court to convene a three-judge court unless a substantial federal question is involved. *Kinsella v. Board of Education of Central School District*, 402 F.Supp. 1155, 1158 (W.D.N.Y.1975), citing *Ex parte Poresky*, 290 U.S. 30, 31-32, 54 S.Ct. 3, 4-5, 78 L.Ed. 152 (1933). See *Wicks v. Southern Pacific Co.*, 231 F.2d 130, 134 (9 Cir.), *cert. denied*, 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471 (1956) ("We believe that a single district judge may dismiss a complaint if he decides that a substantial constitutional issue is not raised therein."). See also *Sims v. Amos*, 336 F.Supp. 924, 929 (M.D.Ala.) (three-judge court *per curiam*), *aff'd sub nom. Amos v. Sims*, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972). Since the issues in this action have recently been passed upon in this and in other circuits, as indicated in the discussion below, the court finds that no substantial federal question is presented. Accord *Faustino v. INS*, 302 F.Supp. 212, 213, 215 (S.D.N.Y.1969), *aff'd*, 432 F.2d 429 (2d Cir. 1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971). Consequently, plaintiffs' request for the convening of a three-judge court is denied.

█ It should be noted that "[o]ver no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens. *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909), cited in *Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972). The Court's reaffirmations of the principle that

Congress' power over immigration matters is plenary are "legion." *Id.* and n.6, 92 S.Ct. 2583. The language used by the first Mr. Justice Harlan in *Lem Moon Sing v. United States*, 158 U.S. 538, 547, 15 S.Ct. 967, 970, 39 L.Ed. 1082 (1895), bears repetition here:

> "The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced through executive officers, without judicial intervention, is settled by our previous adjudications."

These precepts were recently followed by the Court in *Fiallo v. Bell*, 430 U.S. 787, 792 & nn.4, 5, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977), which reiterated that Congress can establish rules that would be improper if applied to citizens.

■ With this background in mind, we turn to the constitutional claims advanced by plaintiffs. Section 201(b) is attacked on its face as violative of equal protection principles embodied in the Fifth Amendment in that it discriminates against United States citizens and their parents on the basis of the citizen child's age without having a rational relation to a valid legislative purpose (Verified Complaint ¶¶ 57–58). Subsections (a) and (b) of § 201 are also challenged on the ground that they are unconstitutional as applied to plaintiffs in that they discriminate against this citizen child and her alien parent on the basis of the child's age, operate here to destroy their relationship, and deprive them of their rights to mutual association and privacy (Verified Complaint ¶¶ 52–56, 59).

Pursuant to Congress' plenary power in the area of immigration deriving from Article I, section 8, clause 4 of the Constitution, laws promulgated to carry its mandate into effect, "[u]nless . . . wholly devoid of any conceivable rational purpose, or . . . fundamentally aimed at achieving a goal unrelated to the regulation of immigration, . . . are not unconstitutional encroachments on the right to equal protection of the laws." *Fiallo v. Levi*, 406 F.Supp. 162, 166 (E.D.N.Y.1975) (three-judge court) (footnotes omitted), *aff'd sub nom. Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). It is unquestionable that Congress had a rational purpose in enacting the legislation at issue here. It sought to preclude aliens from entering this country as visitors, giving birth to a child here, and then claiming admission as of right. At the same time, Congress intended to permit adult citizen children to effect the reunification of their families by bringing aging foreign parents into this country. See *Hearings on S. 500 Before the Subcomm. on Immigration and Naturalization of the Senate Comm. on the Judiciary*, 89th Cong., 1st Sess. 230–31 (1965); *Perdido v. INS*, 420 F.2d 1179, 1181 (5th Cir. 1969).

The very sections here under attack have been upheld in numerous challenges almost identical to this one, and it is now established that Congress may constitutionally distinguish between citizen children on the basis of age for the purpose of subjecting their parents to the quota limitations. *Faustino v. INS*, 432 F.2d 429, 430 (2d Cir. 1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971). Accord *Rubio de Cachu v. INS*, 568 F.2d 625, 627 (9th Cir. 1977); *Perdido v. INS, supra; Lopez v. Franklin*, 427 F.Supp. 345, 350 (D.Mich. 1977). As the Fifth Circuit stated in *Perdido*:

> "Not every family with diverse citizenship among its members can be reunited in this country. Congress had to make some distinction. Since minor children do not ordinarily determine where their own home will be, much less the family home, Congress recognized a rational distinction when it limited the category of those who could confer immigration benefits on their parents to persons over twenty-one years of age. It gave this privilege to those of our citizens who had themselves chosen to make this country their home and did not give the privilege to those minor children whose non-citizen parents make the real choice of family residence." 420 F.2d at 1181.

Plaintiffs attempt to distinguish *Faustino* and *Perdido* on the ground that those cases involved deportation of both alien parents of a citizen child, whereas here plaintiff's former wife is a United States citizen who will retain custody of their child in the United States. In *Faustino* and *Perdido*, he maintains, at least the families were able to depart together. Here, plaintiffs argue, failure to classify George Papakonstantinou as the "immediate relative" of his daughter will result in their forced separation, contrary to the spirit of § 201 to preserve family unity, as evidenced by the case law.

There can be no doubt that enforcement of § 201, denying "immediate relative" status to George Papakonstantinou, will result indirectly in his deportation, whereas his minor citizen daughter, in the custody of her mother with whom she has lived her entire life, will remain in the United States. This factual difference from *Faustino* and *Perdido*, however, fails to present a constitutional issue.

Despite the unfortunate consequences to George Papakonstantinou, the intent of Congress is explicit. Section 201 establishes quota restrictions on immigration by aliens. It also provides two narrow exceptions, one for aliens who have citizen children over age twenty-one, the other for "special immigrants" who are citizens of western hemisphere countries. It is conceded that George Papakonstantinou falls within neither of these categories. Therefore, he is subject to the quota restrictions of § 201.

This legislation, as we explained earlier, has repeatedly withstood constitutional attack in the courts of appeals. It is not for this court to ignore the clear mandate of Congress and to graft a judicial exception to the statutory scheme. If the result which here obtains is repugnant to congressional intent or constitutional principles, fifteen years of judicial decisions under subsection (b) to § 201 do not belie it. See Pub.L. No. 89–236, § 1, 79 Stat. 911 (1965), which added the language of subsection (b) to § 201.

■ Incidental hardship to a deportable alien's citizen child, moreover, does not stand in the way of the application of federal immigration laws. *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957); *Mendez v. Major*, 340 F.2d 128, 131–32 (8th Cir. 1965); *Application of Amoury*, 307 F.Supp. 213, 216 (S.D.N.Y.1969). *Cf. Acosta v. Gaffney*, 558 F.2d 1153, 1158 (3d Cir. 1977) (deportation of alien parents of citizen child, though resulting effectively in the deportation of the child, would "merely postpone, but not bar" her return to the United States should she ever decide to live here); *Enciso-Cardozo v. INS*, 504 F.2d 1252 (2d Cir. 1974) (no due process violation where citizen child was denied leave to intervene in mother's deportation proceeding); *Pelupo de Toledo v. Kiley*, 436 F.Supp. 1090, 1094 (E.D.N.Y. 1977) (de facto deportation of citizen child resulting from deportation of parent does not invalidate parent's deportation order).

■ Furthermore, plaintiffs' plea for family unity rings a bit hollow in light of the fact that George Papakonstantinou has not lived with his former wife since their child was born, in 1973, and instituted and obtained a divorce from her in 1976. In any event, "the integrity of the family" is not protected by equal protection principles where, as here, less than all of the family members are found deportable. *Noel v. Chapman*, 508 F.2d 1023, 1027 (2d Cir.), *cert. denied*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975). Nor does the ninth amendment prevent the deportation of the alien parents of a citizen child, where the impact on the child, while strong, is nevertheless incidental to the enforcement of the immigration laws. *Cervantes v. INS*, 510 F.2d 89, 92 (10th Cir. 1975).

■ Plaintiffs' final contention is that §§ 101(a)(27)(A) and 212(a)(14) of the Act, which exclude citizens of eastern hemisphere countries from "special immigrant" classification for § 201(a) quota purposes, while granting such classification to citizens from western hemisphere countries, discriminate against United States citizens and their parents without rational justification (Verified Complaint ¶ 60). Suffice it to

say that these provisions, challenged upon the same grounds, have repeatedly withstood constitutional attack. *Faustino v. INS, supra,* 432 F.2d at 431. Accord *Dunn v. INS,* 499 F.2d 856, 859 (9th Cir. 1974), *cert. denied,* 419 U.S. 1106, 95 S.Ct. 776, 42 L.Ed.2d 801 (1975). See *Noel v. Chapman, supra,* 508 F.2d at 1028–29; *Hitai v. INS,* 343 F.2d 466, 467 (2d Cir.), *cert. denied,* 382 U.S. 816, 86 S.Ct. 36, 15 L.Ed.2d 63 (1965); S.Rep.No.748, 89th Cong., 1st Sess., *reprinted in* [1965] U.S.Code Cong. & Admin.News, pp. 3328, 3335–36.

Accordingly, since the court finds plaintiffs' constitutional claims to be insubstantial, their request for a three-judge court, for a declaration that the challenged statutes are inapplicable and unconstitutional, and for an injunction to restrain the enforcement of the statutes is in every respect denied, and defendants' motion to dismiss is granted.

SO ORDERED.